J-S84020-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KEVIN CURTIS HILTON | : | |
| | : | |
| Appellant | : | No. 3593 EDA 2017 |

Appeal from the Judgment of Sentence October 23, 2017
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0011010-2016

BEFORE:  BENDER, P.J.E., OTT, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY OTT, J.:                                    **FILED MAY 14, 2019**

Kevin Curtis Hilton appeals from the judgment of sentence imposed on October 23, 2017, in the Court of Common Pleas of Philadelphia County, following his non-jury conviction of one count each of aggravated assault, resisting arrest, reckless endangerment, possession of a firearm prohibited, firearms not to be carried without a license, carrying firearms in public in Philadelphia, and possession of a controlled substance.[1]  On October 23, 2017, the trial court sentenced him to 8½ to 17 years' imprisonment.  On appeal, Hilton challenges:  (1) the sufficiency of the evidence underlying his aggravated assault conviction; and (2) the trial court's decision to grant the

_____

[1] 18 Pa.C.S.A. §§ 2702(a)(6), 5104, 2705, 6105(a)(1), 6106(a)(1), 6108, and 35 P.S. § 780-113(a)(16), respectively.

Commonwealth's motion to amend the bills of information after the rendering

of the verdict.  Based upon the following, we affirm.

The trial court set out the relevant facts and procedural history as

follows:

> The [C]ommonwealth called two witnesses in their case in chief.
> Philadelphia Police Officers Justin Morris and Thomas Morrow.
>
> * * * *
>
> Officer Morris testified as follows.  He was on duty as a
> Philadelphia Police Officer on September 25, 2016[,] and was
> assigned to work the Puerto Rican Day Parade detail at the comer
> of 6th and Sedgley.  He observed [Hilton] with a female walking
> down 6th Street toward Tioga.  As [Hilton] adjusted his shirt
> upward, the [O]fficer saw the handle of a firearm in his waistband.
> Officer Morris followed [Hilton] down the street and approximately
> three quarters (3/4) of the way down the block, [Hilton] stopped,
> turned around and looked at the officer.  Officer Morris then pulled
> his service revolver, kept it at his side, and told [Hilton,] "I saw
> what was in your waistband."  [Hilton] then put his hand on his
> shirt where the [O]fficer had seen the gun handle and responded
> with "I don't have nothing" and turned around and continued
> walking down 6th Street.
>
> Officer Morris then followed [Hilton] down the street and while
> doing so he waved over fellow Police Officers Morrow and
> Narine,[2] who also were on detail at the parade across the street
> on the corner of 6th and Tioga.  As the fellow officers approached,
> Officer Morris, who had already holstered his own firearm, pushed
> [Hilton] up against a wall.  When the other officers arrived from
> across the street [Hilton's] chest was against the wall and Officer
> Morris was facing the wall directly behind [Hilton].  Responding
> Officer Morrow was to the far left of them, close to [Hilton's] left
> side and Officer Narine was to Officer Morris's immediate left.
>
> [Hilton] then took his right hand and placed it onto the firearm
> that was under his shirt.  While [Hilton] was attempting to pull his

---

[2] Officer Narine's first name is not included in the certified record.

hand and the firearm up, Officer Morris was using his own right hand to push [Hilton's] hand down so as to try and keep the firearm in [Hilton's] waistband. However, [Hilton] was able to pull the firearm up and pointed it in the direction of Officer Morrow's "center mass" with his finger on the trigger for two or three seconds. Officer Morris believed that [Hilton] was then going to shoot Officer Morrow. Officer Morris was then able to twist [Hilton's] hand backward and pull the firearm out of [Hilton's] hand before any shots were fired.

Although [Hilton] continued to resist the officers' attempts to subdue and arrest him, [he] was eventually handcuffed, arrested and searched. Recovered from [Hilton] were thirteen (13) clear packets that tested positive for the presence of both heroin and cocaine, and the firearm, which was a black 9mm handgun with one live round in the chamber and four in the magazine.

The Commonwealth then played and offered into evidence a 28[-]second You Tube video depicting a portion of the confrontation between [Hilton] and the police officers. Officer Morris testified that the video did not begin until after the firearm had already been pointed in Officer Morrow's direction and after Officer Morris had already managed to take the gun from [Hilton].

On cross-examination[,] Officer Morris agreed it was possible that during his struggle with [Hilton] for his firearm [Hilton] may have had his firearm pointed at Officer Morrow for less than the 2-3 seconds that he testified to on direct examination.

On redirect-examination, Officer Morris testified that during his struggle to take the firearm from [Hilton], [Hilton] was "very strong" and was using "a lot of effort" to continue to pull the gun up from his waistband and point it in the direction of Officer Morrow.

* * * *

Officer Morrow testified as follows. He was on duty as a Philadelphia Police Officer on September 25, 2016[,] and was assigned to work the Puerto Rican Day Parade detail at the comer of 6th and Tioga with his partner, Officer Narine. At approximately 5:00p.m., Officer Narine told him that Officer Morris had flagged him for their assistance in what appeared to be a stop of a male. Officer Morrow then saw Officer Morris midway up the block on

6th Street. When he arrived he saw that Officer Morris had [Hilton] up against a wall and [O]fficer Morris then screamed the word "gun" as a warning to the responding officers that [Hilton] possessed a firearm. Officer Morrow testified that while Officer Morris was trying to disarm [Hilton], [Hilton's] body was bladed to the left facing where Officer Morrow was now positioned about a foot away to prevent [Hilton's] escape. He observed the firearm being held by [Hilton] and saw Officer Morris attempting to disarm him. Officer Morrow agreed that [Hilton] was actively raising the gun against Officer Morris's downward action. He then saw [Hilton's] arm and wrist come up with the barrel of the gun pointed at his midsection with [Hilton's] finger on the trigger. Officer Morrow testified that he thought that he was about to be shot and possibly killed.

On cross-examination, Officer Morrow stated that although he testified at the preliminary hearing that the gun was pointed at him for ten seconds it may have only been for two or three seconds. He agreed that in the statement that he gave to detectives following [Hilton's] arrest he stated that he had observed [Hilton] "twisting the gun up and the gun was pointed at my direction." However, Officer Morrow testified that he now believes that [Hilton] wasn't twisting when he pointed the gun at him but rather was putting his hand and gun out towards him.

Trial Court Opinion, 3/29/2018, at 3-6 (footnotes and record citations omitted).

A bench trial was conducted on June 1, 2017. Following argument, the trial court found Hilton guilty of the aforementioned charges and not guilty of attempted murder. However, the trial court found Hilton guilty of aggravated assault under 18 Pa.C.S.A. § 2702(a)(6), which the Commonwealth had not charged in the bills of information. N.T. Trial, 6/01/2017, at 120. Therefore, the Commonwealth asked to amend the bills and defense counsel agreed to the amendment. *Id.*

On October 23, 2017, the trial court sentenced Hilton as referenced above. On October 25, 2017, defense counsel filed a motion for reconsideration of sentence and a motion to withdraw as counsel. The trial court denied the motion for reconsideration of sentence but granted the motion to withdraw as counsel on October 31, 2017; the court also appointed new counsel to represent Hilton on appeal. On November 1, 2017, Hilton filed a timely notice of appeal. In response to the trial court's order, on December 20, 2017, after the court granted him an extension of time, Hilton filed a timely concise statement of errors complained of on appeal. On March 29, 2018, the trial court issued an opinion.

In his first claim, Hilton argues that the evidence was not sufficient to sustain his conviction for aggravated assault.[3] Specifically, he contends that the Commonwealth failed to prove that he "intentionally attempted by physical menace to put any police officer in fear of imminent serious bodily injury." Hilton's Brief, at 19. We disagree.

Our standard of review for a claim of insufficient evidence is as follows:

The determination of whether sufficient evidence exists to support the verdict is a question of law; accordingly, our standard of review is *de novo* and our scope of review is plenary. In assessing [a] sufficiency challenge, we must determine whether viewing all the evidence admitted at trial in the light most favorable to the [Commonwealth], there is sufficient evidence to enable the factfinder to find every element of the crime beyond a reasonable doubt. [T]he facts and circumstances established by the

---

[3] Hilton does not challenge the sufficiency of the evidence underlying the remaining charges.

Commonwealth need not preclude every possibility of innocence. . . . [T]he finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part[,] or none of the evidence.

***Commonwealth v. Edwards***, 177 A.3d 963, 969-970 (Pa. Super. 2018) (quotation marks and citations omitted).

The trial court convicted Hilton of violating 18 Pa.C.S.A. § 2702(a)(6). Section 2702 states, in relevant part:

**(a) Offense defined.**--A person is guilty of aggravated assault if he:

* * * *

(6) attempts by physical menace to put any of the officers, agents, employees or other persons enumerated in subsection (c), while in the performance of duty, in fear of imminent serious bodily injury[.]

18 Pa.C.S.A. § 2702(a)(6).

Here, as detailed above, the uncontradicted evidence at trial demonstrated that Officer Morris saw a gun in Hilton's waistband. When stopped, Hilton did not drop the gun or allow Officer Morris to pat him down but instead actively resisted. During the struggle, and despite Officer Morris's attempt to hold Hilton's hand down, Hilton reached into his waistband, pulled out the loaded and operable gun, and, with his finger on the trigger, pointed it at Officer Morrow. Hilton continued to point the gun at Officer Morrow for a few seconds until Officer Morris was able to twist his hand and ultimately wrestle the gun away. Officer Morris testified that he believed Hilton intended

to shoot Officer Morrow, and Officer Morrow testified that he was in fear of his life.

This evidence is sufficient to find Hilton guilty of aggravated assault. *See Commonwealth v. Sheppard*, 837 A.2d 555, 558 (Pa. Super. 2003) (holding evident sufficient to sustain conviction under 18 Pa.C.S.A. § 2702(a)(6), where defendant pointed gun at uniformed police officer and initially refused instruction to drop weapon); *Commonwealth v. Little*, 614 A.2d 1146, 1152 (Pa. Super. 1992) (holding act of pointing gun at another person can constitute attempt by physical menace to put another in fear of serious bodily injury), *appeal denied*, 618 A.2d 399 (Pa. 1992). Moreover, Hilton's argument, which is primarily a series of alternate explanations for his actions, is less an attack on the sufficiency of the evidence and more a request that we reweigh the evidence in his favor, a claim that is not before this Court. Hilton's Brief, at 21-30; *see also Commonwealth v. W.H.M., Jr.*, 932 A.2d 155, 160 (Pa. Super. 2007) (claim that finder-of-fact should not have believed victim's version of events goes to weight, not sufficiency of evidence). Hilton's first claim lacks merit.

In his second and final claim, Hilton contends that the trial court erred in allowing the Commonwealth to amend the bills of information after the verdict to include a charge under 18 Pa.C.S.A. § 2702(a)(6). Hilton's Brief, at 30-37. However, Hilton waived this claim.

At trial, the court, after hearing the evidence, convicted Hilton under 18 Pa.C.S.A. § 2702(a)(6), rather than Section (a)(2) as originally charged by the Commonwealth. N.T. Trial, 6/01/2017, at 120. The following then occurred:

> [The Commonwealth]: Can I just make a motion, Your Honor, to officially amend the bills for that charge?
>
> The Court: You can. I believe —
>
> [Defense Counsel]: I think it's a lesser included.
>
> [The Commonwealth]: I do as well.
>
> The Court: As a jury, I could charge myself on that, just like I could charge a jury.
>
> [Defense Counsel]: The Commonwealth can amend up through sentencing, I believe, **so I don't have an objection.**
>
> [The Commonwealth]: I just want to make sure.
>
> The Court: It's 2702(a)(6).

***Id.*** (emphasis added).

Thus, it is evident that, not only did Hilton not object to the amendment, he actually acquiesced. Our Supreme Court has held that failure to raise a contemporaneous objection constitutes a waiver of the claim. ***See Commonwealth v. Powell***, 956 A.2d 406, 419 (Pa. 2008), *cert. denied*, 556 U.S. 1131 (2009). Furthermore, this Court will not overlook waiver simply because the trial court addressed the issue in its 1925(a) opinion. ***See Commonwealth v. Melendez-Rodriguez***, 856 A.2d 1278, 1287-1289 (Pa. Super. 2004) (*en banc*) (holding defendant's failure to object to admissibility

of inflammatory photographs before or during trial waived issue for review on appeal, despite fact defendant raised claim in Pa.R.A.P. 1925(b) statement and court addressed it in opinion). In addition, an appellant cannot raise issues for the first time in a Rule 1925(b) statement. *See Commonwealth v. Coleman*, 19 A.3d 1111, 1118 (Pa. Super. 2011) (issues raised for first time in Rule 1925(b) statement are waived). Thus, Hilton waived his second claim.[4]

For all the foregoing reasons, we affirm Hilton's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/14/19

---

[4] We note as did the trial court, *see* Trial Ct. Op. at 11, that the conviction pursuant to Section (a)(6) resulted in a downgrade of the charge from an F-1 to an F-2.